UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SNAGPOD, LLC,

           Plaintiff,                  Case No. 23-cv-10401

v.                                          Paul D. Borman
                                              United States District Judge
PRECISION KIOSK TECHNOLOGIES,
INC.

           Defendants.
_____/

## ORDER GRANTING DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS (ECF No. 22)

### INTRODUCTION

In this action, Plaintiff SnagPod LLC ("SnagPod") asserts claims against Defendant Precision Kiosk Technologies, Inc. ("PKT") for copyright infringement of their various breathalyzer, alcohol testing, and kiosk technologies under 17 U.S.C. § 501. Now before the Court is Defendant PKT's Motion for Judgment on the Pleadings Pursuant to Fed. R. Civ. P. 12(c) (ECF No. 22). On Wednesday October 11, 2023, the Court held a hearing on Defendant's motion.

1

# I. STATEMENT OF FACTS

The facts as alleged by Plaintiff SnagPod are as follows. In 2009, SnagPod, an alcohol and drug testing company, developed breathalyzer, alcohol testing, and kiosk technologies (collectively, "the SnagPod Software") designed to assist Probation Officers in monitoring their clients. (ECF No. 1, PageID.4). The SnagPod Software is the subject of a US Copyright Registration. (*Id.*). The SnagPod Software is also the subject of a video ("the SnagPod Video"), which is also protected by a US Copyright Registration. (*Id.*). The SnagPod Software was licensed to LifeLoc Technologies, Inc. for use in a breathalyzer kiosk ("the SnagPod Kiosk"), which was also covered by this same US Copyright Registration. (ECF No. 1, PageID.5).

Defendant PKT, a similar company, offers alcohol screening, pre-trial services, probation check-ins, and monitoring of diversion, treatment, and work-release programs. (*Id.*). David Kreitzer ("Kreitzer"), a PKT employee who supervised the engineering and creation of PKT's automated breathalyzer kiosk, was contacted by a Wisconsin Sherriff's Department about creating a lower-cost copy of the SnagPod Kiosk. (ECF No. 1, PageID.5–6). Kreitzer, who had access to the SnagPod Software and the SnagPod Video, proceeded to create a copy of the SnagPod Kiosk known as the Automated Breathalyzer Kiosk ("AB Kiosk"). (ECF No. 1, PageID.6).

2

SnagPod contends that the AB Kiosk is a derivative of the SnagPod Kiosk, and that it copies several of the SnagPod Kiosk's functions, formats, and elements. (*Id.*). SnagPod alleges that they have suffered and continue to suffer damages due to PKT's wrongful copying of the SnagPod Kiosk. (*Id.*).

## II. PROCEDURAL BACKGROUND

SnagPod initiated this action by filing a seven count Complaint against PKT on February 15, 2023. (ECF No. 1). The Complaint asserts several claims all stemming from PKT's alleged copying of the SnagPod Software and Video. Counts I–III state claims for copyright infringement under 17 U.S.C. § 501. (ECF No. 1, PageID.7–11). Count IV states a claim for deceptive trade practices under Mich. Comp. Law § 445.903. (ECF No. 1, PageID.12). Count V states a claim for unjust enrichment. (ECF No. 1, PageID.12–13). Count VI states a claim for trade dress infringement under 15 U.S.C. § 1125(a). (ECF No. 1, PageID.13–14). Count VII states a claim for dilution under 15 U.S.C. § 1125(c). (ECF No. 1, PageID.14).

On March 17, 2023, Defendant PKT filed its Answer to Plaintiff's Complaint. (ECF No. 9). PKT denied the bulk of SnagPod's allegations as untrue and asserted several affirmative defenses. (*Id.*) On June 2, 2023, PKT filed a Motion for Judgment

3

on the Pleadings pursuant to Fed. R. Civ. P. 12(c) as to all counts of SnagPod's Complaint. (ECF No. 22).

On June 22, 2023, the parties stipulated to the dismissal of Counts IV–VII of the Complaint. (ECF No. 23). On June 23, 2023, the Court filed a Stipulated Order of Dismissal of those counts with prejudice. (ECF No. 24).

Also on June 23, 2023, SnagPod filed a Response to PKT's Motion for Judgment on the Pleadings as to the remaining counts. (ECF No. 25). On July 7, 2023, PKT filed its Reply, in support of its motion. (ECF No. 26).

### III. LEGAL STANDARD

"A motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) generally follows the same rules as a motion to dismiss the complaint under Rule 12(b)(6)." *Amir v. AmGuard Ins. Co.*, 606 F. Supp. 3d 653, 658 (E.D. Mich. 2022) (citing *Bates v. Green Farms Condo. Ass'n*, 958 F.3d 470, 480 (6th Cir. 2020)).

Federal Rule of Civil Procedure 12(b)(6) allows for the dismissal of a case where the complaint fails to state a claim upon which relief can be granted. When reviewing a motion to dismiss under Rule 12(b)(6), a court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true,

4

and draw all reasonable inferences in favor of the plaintiff." *Handy-Clay v. City of Memphis*, 695 F.3d 531, 538 (6th Cir. 2012). To state a claim, a complaint must provide a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "[T]he complaint 'does not need detailed factual allegations' but should identify 'more than labels and conclusions.'" *Casias v. Wal–Mart Stores, Inc.*, 695 F.3d 428, 435 (6th Cir. 2012) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

The court "need not accept as true a legal conclusion couched as a factual allegation, or an unwarranted factual inference." *Handy-Clay*, 695 F.3d at 539 (internal citations and quotation marks omitted). In other words, a plaintiff must provide more than a "formulaic recitation of the elements of a cause of action" and his or her "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555–56. The Sixth Circuit has explained that, "[t]o survive a motion to dismiss, a litigant must allege enough facts to make it plausible that the defendant bears legal liability. The facts cannot make it merely possible that the defendant is liable; they must make it plausible." *Agema v. City of Allegan*, 826 F.3d 326, 331 (6th Cir. 2016) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

## IV. ANALYSIS

**A. Because PKT's Motion for Judgment on the Pleadings as to Counts I–III turn on the same legal issue, the three counts can be analyzed together.**

PKT seeks judgment on the pleadings in its favor as to the three remaining counts of SnagPod's complaint. (ECF No. 22, PageID.182). All three counts state claims for copyright infringement under 17 U.S.C. § 501. Count I alleges that PKT violated the statute by copying the SnagPod Software. Count II alleges the same for the SnagPod Video. Count III alleges that PKT violated the statute by distributing the AB Kiosk, a derivative work of its copyrighted Software and Video.

Although these are three distinct counts, they all turn on the same legal issue: whether the elements of the SnagPod Kiosk that SnagPod seeks to protect are subject to copyright protection under 17 U.S.C. § 102(b). Accordingly, the Court will analyze the three claims together.

**B. SnagPod's Complaint does not satisfy either prong required to establish a copyright infringement claim under *Lexmark* and *Feist*.**

Title 17 U.S.C. § 106 gives the owner of a copyright the exclusive right to, among other things, reproduce, prepare derivative works, and distribute the copyrighted work. Works of authorship, including literary works, are among the types of works eligible for copyright protection under the statute. 17 U.S.C. § 102(1). PKT does not argue that software, like the SnagPod Kiosk, cannot qualify as a

6

literary work *per se*. Rather, PKT contends that the specific elements of the SnagPod Kiosk that SnagPod seeks to protect are unprotectable under the test set forth in *Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991) and expounded on by the Sixth Circuit in *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 387 F.3d 522 (6th Cir. 2004). (ECF No. 22, PageID.174).

To establish a claim for copyright infringement of software a plaintiff must show "(1) ownership of a valid copyright in the computer program at issue … and (2) that the defendant copied protectable elements of the work." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 387 F.3d 522, 534 (6th Cir. 2004) (citing *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.,* 499 U.S. 340, 361 (1991)). SnagPod's Complaint fails to satisfy either prong.

    i.    ***SnagPod has not pled ownership of a valid copyright in its Software and Video.***

SnagPod has not established that it owns a valid copyright in the elements of the SnagPod Kiosk it seeks to protect. (ECF No.22, PageID.175). This prong of *Lexmark* tests "the originality and non-functionality of the work." *Id.* (citing *M.M. Bus. Forms Corp. v. Uarco, Inc.,* 472 F.2d 1137, 1139 (6th Cir. 1973). *Id*. Under 17 U.S.C. § 102(a), only "original works of authorship" are entitled to copyright protection. That a work is original "means only that the work was independently created by the author (as opposed to copied from other works), and that it possesses

7

at least some minimal degree of creativity, even if the work is not a novel one." *Id.* (quoting *Feist,* 499 U.S. at 345–46) (internal quotation mark omitted). "[T]he threshold showing of originality is not a demanding one," (*Id.*) "even a slight amount will suffice. *Id.* (quoting *Feist*, 499 U.S. at 345).

Nonetheless, even if a work is original within the meaning of U.S.C. § 102(a), it may still be unprotectable under U.S.C. § 102(b), which states that:

> In no case does copyright protection for an original work of authorship extend to any idea, procedure, process, system, method of operation, concept, principle, or discovery, regardless of the form in which it is described, explained, illustrated, or embodied in such work.

U.S.C. § 102(b). This provision exemplifies the common-law demarcation between the domains of copyright law and patent law. *Lexmark*, 387 F.3d at 534. "[U]nlike a patent, a copyright gives no exclusive right to the art disclosed; protection is given only to the expression of the idea—not the idea itself." *Id.* (quoting *Mazer v. Stein,* 347 U.S. 201, 217 (1954)). *See also RJ Control Consultants, Inc. v. Multiject, LLC*, 981 F.3d 446, 455 (6th Cir. 2020) ("copyright law protects an author's original expression but does not give the author the exclusive right to use the ideas expressed in that work. Such ideas may only be protected by obtaining a patent").

This "elusive boundary line between idea and expression, between process and non-functional expression" is where this case lies. *Lexmark*, 387 F.3d at 535. SnagPod contends that the allegedly copied elements of the SnagPod Kiosk

8

"comprise original and creative expressions" protectable under copyright law. (ECF No. 1, PageID.7). PKT, however, believes these elements are unprotectable ideas. (ECF No. 22, PageID.181).

Two related doctrines help distinguish between the categories. First, under the doctrine of merger, "[w]here the expression is essential to the statement of the idea … the idea and expression are said to have merged" and "copyright protection does not exist because granting protection to the expressive component of the work necessarily would extend protection to the work's uncopyrightable ideas as well." *Lexmark*, F.387 F.3d at 535 (internal quotation marks omitted). Similarly, under the doctrine of *scenes a faire*[1], "when external factors constrain the choice of expressive vehicle," choices that must be made because of these constraints are precluded from receiving copyright protection. *Id*. In the software context, this means that "elements of a program dictated by practical realities—*e.g.*, compatibility requirements, computer manufacturer design standards, target industry practices, and standard computer programming practices—may not obtain protection." *Id.* With these

---

[1] Under *Scenes a faire*, to the extent that an expressive vehicle is functional and "must necessarily be used as incident to expression of the underlying ideas" that vehicle is not copyrightable. *Sega Enterprises Ltd. v. Accolade, Inc.*, 977 F.2d 1510, 1524 (9th Cir. 1992) (internal quotation mark omitted).

doctrines in mind, the Court must discern whether SnagPod seeks to protect expression or idea.

SnagPod seeks to protect the "sequence, structure, organization, and user interface of the input and output formats" of the SnagPod Kiosk. (Complaint, ECF No. 1, PageID.8). These include:

> "[T]he ideas, procedures, processes, systems, and/or methods of operation of embedded in a "Welcome" page, a "Personal Info" page, an "Enter Your User ID" page, a "Taking Your Photo" page, a "Creating Fingerprint Records" page, a "Fingerprint Authorization" page, "Alcohol Testing" pages, and "Alcohol Test Completed" pages.

(ECF No.22, PageID.177). PKT contends that these are necessary "components of, or steps in, a computer alcohol breathalyzer system," which are unprotectable under the doctrines of merger and *scenes a faire* as codified by 17 U.S.C. § 102(b). (ECF No. 22, PageID.178). Put differently, for PKT's motion to succeed, this Court must determine that a "Welcome" page, an "Enter Your User ID," page, a "Take Your Photo" page, a "Creating Fingerprint Records" page, a "Fingerprint Authorization" page, "Alcohol Testing" pages, and "Alcohol Test Completed" pages, and their sequence, structure, and organization, are so essential to and embedded in the operation of an alcohol breathalyzer kiosk as to be precluded from copyright protection under the above doctrines. The Court finds this to be correct.

Consider first the pages themselves. How would an automated breathalyzer kiosk operate without an "Enter Your User ID" page? Each user must have a unique ID or else it would be impossible for the kiosk to accurately record the results of each test. The same is true for the "Fingerprint Authorization" and "Take Your Photo" pages: Without them, how could an automated kiosk verify the identities of the users it tests? As to the "Alcohol Testing" and "Alcohol Test Completed" pages: How could a breathalyzer kiosk function without pages initiating the breathalyzer test and informing its users when the test has been completed?

The same is true for the sequence and organization of these pages, which SnagPod also seeks to protect. First, the kiosk must obtain the user's ID. Then it must verify the user's identity with fingerprints and photographs. Next, it must administer the breathalyzer test. Lastly, it must let the user know that the test has been completed. It strains credulity to suggest that these pages could be sequenced and organized in any other logical manner.

SnagPod does not directly contest PKT's assertions that the elements it seeks to protect are essential to the operation of a breathalyzer kiosk and are thus unprotectable under merger and *scenes a faire.* Instead, SnagPod argues only that the Court cannot make this determination without discovery and expert testimony. (ECF No. 25, PageID.231).

To support its argument, SnagPod relies on *RJ Control Consultants* in which the Sixth Circuit noted that, in the computer software context, "the assistance of an expert is desirable if, not required" before a court can distinguish between essential element and protectable expression. *RJ Control Consultants*, 446 F.3d at 458. This case is highly distinguishable from our present dispute.

There, the copyrighted material at issue was the software source code used in a rotary turntable control system for a plastic injection molding device. *Id.* at 451. In short, to determine if the source code was copyrightable, the court would have had to parse individual lines of computer code to determine:

> "Which aspects or lines of the software code are functional? Which are expressive? Which are commonplace or standard in the industry? Which elements, if any, are inextricably intertwined?"

*Id*. at 458. The Court agrees that parsing individual lines of code is beyond its expertise and would likely require expert witnesses, but no such parsing is required here. Unlike the plaintiff in *RJ Control Consultants*, SnagPod does not claim that PKT has copied individual lines of the source code it used to create the SnagPod Kiosk. Rather, it claims that PKT copied elements of the SnagPod Kiosk's outputs: the landing pages, the structure, the input prompts, and the sequence. These are much simpler claims to analyze. As such, the language from *RJ Control Consultants* counseling the use of expert testimony in certain cases is inapplicable here.

Instead, a closer analog to our case is *Gray-El v. Jennifer Lopez/Nuyorican Prods., Inc.*, 2019 WL 8750506 (E.D. Mich. Dec. 18, 2019).[2] There, the plaintiff brought a copyright infringement action against the defendant for allegedly copying his idea for a reality television dancing show. *Id*. at *1. The court dismissed the claim under *scenes a faire* because the elements of the show that the plaintiff sought to protect "the existence of a competition generally, judges, an audience, rounds of competition and elimination, a host or hosts, and a prize or prizes for the winner" are essential elements to any reality dance television show and were thus unprotectable. *Id*. at 12. *See also Milano v. NBC Universal, Inc.*, 584 F. Supp. 2d 1288 (C.D. Calif. 2008) (holding the same as to the essential elements of a weight loss show that the plaintiff sought to protect).

The court in *Grey-El*, per Magistrate Judge Michael Hluchaniuk, made its determination without expert testimony and this Court will do the same with SnagPod's claim. *See Taylor v. Victoria's Secret Stores, Inc.*, 2011 WL 13097641, at *5 (W.D. Tenn. Sept. 29, 2011) (finding that it is appropriate for a court to dismiss a copyright infringement claim under Rule 12 "if it concludes that the similarities pertain only to unprotected elements of the work"); *Bowen v. Paisley*, 2013 WL

---

[2] *report and recommendation adopted sub nom. Gray-El v. Lopez*, 2020 WL 1060642 (E.D. Mich. Mar. 5, 2020).

6237469, at *6 (M.D. Tenn. Dec. 3, 2013) (holding that it is appropriate to dismiss a copyright infringement claim at the Rule 12 stage "under appropriate circumstances"); *Bliss Collection, LLC v. Latham Companies, LLC*, 2021 WL 5413796, at *3 (E.D. Ky. Mar. 16, 2021) (noting that "[e]very court of appeal to have addressed the question has held that" courts may dismiss copyright infringement cases at the Rule 12 stage).

In *Gray-El*, expert testimony was not required to determine that persons acting as judges, an audience, hosts, and a cash prize are essential to reality dance shows. Nor, in this case, is an expert witness necessary to determine that a "Welcome" page, a "Personal Info" page, an "Enter Your User ID" page, a "Taking Your Photo" page, a "Creating Fingerprint Records" page, a "Fingerprint Authorization" page, "Alcohol Testing" pages, and "Alcohol Test Completed" pages are equally essential to a breathalyzer kiosk.

Lastly, the Court notes that SnagPod believes it is entitled to a presumption that it satisfies the first prong of *Lexmark* by virtue of the copyrights it holds in the SnagPod Software and SnagPod Video. (ECF No. 25, PageID.224). SnagPod is mistaken.

Under 17 U.S.C. § 410(c), "[i]n any judicial proceedings the certificate of a registration made before or within five years after first publication of the work shall

14

constitute prima facie evidence of the validity of the copyright and of the facts stated in the certificate." Courts have held that, under 17 U.S.C. § 410(c), when the plaintiff has obtained a copyright registration, a presumption exists whereby "the defendant bears the burden of producing evidence which brings into question the copyrightability of the work." *Consul Tec, Inc. v. Interface Sys., Inc.*, 1991 WL 427891, at *4 n.4 (E.D. Mich. Oct. 31, 1991) (quoting *Digital Commc'ns Assocs., Inc. v. Softklone Distrib. Corp.*, 659 F. Supp. 449, 456 (N.D. Ga. 1987)); *see also Lexmark*, F.3d 522 at 535 (noting this same presumption).

SnagPod is not entitled to this presumption because its copyrights in the SnagPod Software and SnagPod Video were certified more than five years after the first publication of each work. The SnagPod Software was first published on June 21, 2011, while the copyright's effective date of registration is January 28, 2022. (ECF No. 1-1, PageID.21). The SnagPod Video was first published on May 5, 2011, but the copyright was not effectively registered until November 23, 2022. (ECF No. 1-2 PageID.24). Since its registration date is outside of the five-year publication window, SnagPod is not entitled to the 17 U.S.C. § 410(c) presumption.

Without the aid of this presumption, and because SnagPod seeks to protect unprotectable essential elements of a breathalyzer kiosk, SnagPod's Complaint does not satisfy the first prong of *Lexmark*.

> ii. **SnagPod has not pled that PKT copied protectable elements of its Software.**

The second prong of *Lexmark*, whether the plaintiff has established that the defendant copied protectable elements of the work, tests "whether any copying occurred (a factual matter) and whether the portions of the work copied were entitled to copyright protection (a legal matter)." *Lexmark*, 387 F.3d at 534. The Court will address these matters in reverse order.

The legal question of whether the elements of the SnagPod Kiosk are entitled to copyright protection hinges on the same idea-expression distinction discussed above. In *Lexmark*, for example, the Sixth Circuit analyzed the doctrines of merger and *scenes a faire* under prong one of its analysis, but noted that courts also commonly do so "as part of prong two of the infringement test." *Id*. at 538. Ultimately, where the analysis is done is immaterial because "[b]oth prongs of the infringement test … consider copyrightability, which at its heart turns on the principle that copyright protection extends to expression, not to ideas." *Id.* Since the Court addressed this principle in the preceding section the Court will not rehash that analysis here.

It is relevant to note that, if the Court granted copyright protection to SnagPod for those elements of the SnagPod Kiosk it seeks to protect, SnagPod would gain a monopoly on breathalyzer kiosks. PKT, and all other competitors, would be unable

16

to create a functional kiosk without infringing on this copyright. In effect, this would give SnagPod patent protection for breathalyzer kiosks when all they have is a copyright in their SnagPod Kiosk. Therefore, as a legal matter, even if one assumes, *arguendo*, that PKT did copy elements of the SnagPod Kiosk, none of those elements are entitled to copyright protection.

SnagPod misses this crucial point. For example, SnagPod argues that, because PKT's Answer denied as untrue SnagPod's allegation that "[t]he AB Kiosk is a substantially similar copy and derivative work of the SnagPod [Kiosk]," this creates a "material issue of fact" as to whether any copying occurred, which precludes the Court from granting PKT's Motion. (ECF No. 25, PageID.220).

This argument neglects to consider that PKT's Answer only creates a material issue of fact if any of the alleged copying, which it denies, pertained to protectable elements of the SnagPod Kiosk. Since, per the above analysis, none of these elements is copyrightable, whether any copying occurred is immaterial and thus does not prevent the Court from granting PKT's Motion.

Lastly, to the extent that SnagPod seeks protection for any copyrightable expressive components of the SnagPod Kiosk, like the Kiosk's layout, format, and color scheme, PKT has, as a factual matter, not copied them. When "[n]o direct evidence of copying is available, a claimant may establish this element by showing

17

that the defendant had access to the copyrighted work and that the copyrighted work and the allegedly copied work are substantially similar." *Id*. at 534. SnagPod's Complaint has done the former, but not the latter.

SnagPod has alleged that PKT had access to the SnagPod Software and SnagPod Video through its copyrights in those works. (ECF No. 1, PageID.6). SnagPod has not, however, shown that the two kiosks are substantially similar. SnagPod attempts to do this in Exhibit F to their Complaint which offers a side-by-side comparison of the interfaces of both kiosks. (ECF No. 1-6, PageID.38–51). But these photographs show that the two interfaces are not substantially similar. PKT notes several of the differences between them:

> The SnagPod Software has a black background with orange buttons; the AB Kiosk has a white background with blue buttons. The SnagPod Software does not have any logos; the AB Kiosk has a "PKT" logo and an ornate "AB" logo. The SnagPod Software displays four green fingerprints; the AB Kiosk displays one white fingerprint.

(ECF No. 22, PageID.181) (internal citations omitted). These are merely a few of the many differences to the layout, format, and color scheme, of the two kiosks' interfaces. Since the layout, format, and color scheme, are the only arguably expressive and protectable components of the SnagPod Kiosk, and because these components are not substantially similar, SnagPod has not established that PKT has

18

copied any protectable elements of their kiosk. Therefore, SnagPod's Complaint also fails this second prong of *Lexmark*.

## V. CONCLUSION

For the above reasons, SnagPod's Complaint does not satisfy either prong of the *Lexmark* test needed to state a claim for copyright infringement. As such, the Court **GRANTS** Defendant's Motion for Judgment on the Pleadings (ECF No. 22) and dismisses the three remaining counts of Plaintiff's Complaint (Counts I-III) with prejudice.

**IT IS SO ORDERED.**

Dated: October 12, 2023                              s/Paul D. Borman
                                                     Paul D. Borman
                                                     United States District Judge